**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| HELEN ANDERSON, | § | |
| (BOP #26703-171) | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-0871-O |
| | § | |
| UNITED STATES OF AMERICA et al., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Before the Court are the Individual Defendants' Motion to Dismiss and Brief in Support (ECF No. 47), and Appendix in Support (ECF No. 48), both filed September 22, 2021. Plaintiff has not filed a response and has had adequate time to respond. *See* Local Rule 7.1. Having considered the motion, appendix, pleadings, and applicable law, and for the reasons that follow, the Court **grants** the Individual Defendants' Motion to Dismiss.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 24, 2018, *pro se* Plaintiff Helen Anderson, an inmate in the custody of the Federal Bureau of Prisons ("BOP"), filed this civil rights lawsuit. At the time she filed her Complaint (ECF No. 1), she was incarcerated at the Federal Medical Center – Carswell ("FMC Carswell") in Fort Worth, Texas. On October 10, 2020, she was released on home confinement under the COVID-19 Cares Act. *See* ECF No. 28. Her release date from the BOP is May 10, 2023. https://www.bop.gov/inmateloc/ (last visited Oct. 21, 2021).

The Court permitted Plaintiff to supplement her allegations by submitting answers to the Court's questionnaire, which she did on May 2, 2019. *See* Pl.'s Ans., ECF No. 7.[1] On January 8,

---

[1] Plaintiff was given the opportunity to expound on her factual allegations by way of a questionnaire. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994) (requiring further development of insufficient factual allegations

2021, Plaintiff, who is proceeding in forma pauperis, filed an Amended Complaint, the live pleading. Am. Compl., ECF No. 30. In her Amended Complaint, she claims primarily that Defendants were deliberately indifferent to her serious medical needs on several occasions during the period she was incarcerated at FMC Carswell. She attributes these alleged constitutional violations to Defendant the United States of America and to the following Defendants sued in their individual capacities: Warden Jody R. Upton ("Warden Upton"); Associate Warden Raul Campos Jr. ("Associate Warden Campos"); Lt. Alfredo Garcia ("Lt. Garcia"); Lt. Damon Cates ("Lt. Cates"); Jeanette Grullon-Mejia, M.D. ("Dr. Grullon-Mejia"); Charles Langham, M.D. ("Dr. Langham"); and Maitee Serrano-Mercado, M.D. ("Dr. Serrano-Mercado"). She also asserts claims of excessive force against Defendants Erica Yardbrough ("Yardbrough") and Counselor Julie LeBlanc ("LeBlanc").

Plaintiff alleges she has multiple physical maladies including: Type I diabetes; peripheral neuropathy; depression; urinary incontinence; allergic rhinitis; osteoporosis; osteoarthritis; constipation; Type II diabetes;  hyperlipidemia; and hypertension. *Id.* at 6, ECF No. 30.[2] Plaintiff's claims for deliberate indifference to her serious medical needs revolve principally around care she received at FMC Carswell to address problems in her legs and feet. She alleges she had repeated episodes of her leg giving out in 2016, but alleges she was not assigned to the inpatient section of the medical center at Carswell. *Id.* at 8. She further alleges that on April 15, 2016, she went to sick call regarding this concern, and that Lt. Cates refused to treat her, did not order x-rays, and instead instructed her to go to sick call on April 18, 2016. She alleges that both Lt. Cates and Dr. Grullon-Mejia were indifferent to her medical needs by not ordering x-rays on

---

before dismissal as frivolous is proper); *Watson v. Ault*, 525 F.2d 886, 892-93 (5th Cir. 1976) (affirming use of questionnaire as proper means for court to develop factual basis of *pro se* plaintiff's complaint).

[2] Because the page numbers in the Amended Complaint are sometimes missing, the Court cites to the page number of the ECF filing.

April 15, 2016, and by failing to properly diagnose her left foot condition as possible fractures and instead attributing all her medical conditions to her diabetes. *Id.* at 8-9.

With respect to Dr. Serrano-Mercado, Plaintiff alleges that she wrongly attributed Plaintiff's pain to diabetes and, in approximately October of 2017, discharged her from the in-patient unit before Plaintiff believes she should have been discharged. *Id.* at 5, 9. Plaintiff alleges that Dr. Grullon-Mejia did not order x-rays when she complained of foot pain in April of 2016, wrongly attributed her foot pain to diabetes, and did not prescribe pain relieving medication. Am. Compl. 5, 8, 9; Pl.'s Ans. No. 2. With respect to Defendant Dr. Langham, Plaintiff alleges he generally failed to provide her with medical care when he did not to give her permission to have an inmate assistant push her wheelchair because of her wrist pain. Am. Compl. 9.

Plaintiff further alleges that on March 17, 2021, she was transported to JPS hospital for an injury to her foot and ankle caused by another inmate. Am. Compl. 8-9; Pl.'s Ans. No. 1. She contends that during the transport, Yardbrough shut the door "into plaintiff's foot." Am. Compl. 8-9; Pl.'s Ans. No. 1. She alleges that she asked Yardbrough to open the door to free her foot from the frame, but Yardbrough did nothing. Am. Compl. 8-9; Pl.'s Ans. No. 1. Plaintiff contends that her foot was shut in the door for the entire trip to JPS, and that the incident caused three fractures in her right foot and broke all of her toes. Am. Compl. 8-9; Pl.'s Ans. No. 1. According to Plaintiff, she was "permanently disabled" after this incident, as she was "already recovering from an injury to her left foot," and now her right foot was injured also. Pl.'s Ans. No. 1. She alleges Yardbrough's use of force was excessive and violated the Eighth Amendment. *Id.*

She also alleges that LeBlanc "shook and rough handled her" during an altercation about her housing assignment. Am. Compl. 10.  She alleges LeBlanc's use of force was excessive and violated the Eighth Amendment. *Id.*

After reviewing and screening her pleadings and answers to the Court's questions under the provisions of 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), the Court allowed her to obtain service of her claims against Defendants.

On September 22, 2021, the United States filed an Answer (ECF No. 46), and the Individual Defendants filed a Motion to Dismiss (ECF No. 47) and appendix in support (ECF No. 48). The Individual Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff has not filed a response. Having considered the motion, appendix, pleadings, and applicable law, and for the reasons that follow, the Court will grant the Rule 12(b)(1) motion to dismiss Plaintiff's claims against Lt. Garcia and Lt. Cates, and grant the Rule 12(b)(6) motion to dismiss Plaintiff's claims against the remaining Individual Defendants.[3]

## II.    LEGAL STANDARDS

### A.     Fed. R. Civ. P. 12(b)(1)

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). When a motion to dismiss for lack of subject matter jurisdiction is supported by evidence, it is considered a factual attack, and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*

---

[3] Although it appears that Plaintiff is suing the Individual Defendants/Movants solely in their individual capacities, to the extent she may be attempting to allege claims against them in their official capacities, these claims are dismissed. Claims for monetary damages against federal employees in an official capacity based upon allegations of constitutional violations are barred by the doctrine of sovereign immunity because they are considered as the actions of the federal agencies by whom they are employed. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985).

*v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The court is therefore "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In response to a factual attack, the plaintiff, as the party seeking to invoke jurisdiction, has the burden of submitting evidence and proving by a preponderance of the evidence the existence of subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Regardless of whether the attack is facial or factual, the party asserting federal jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

Here, Defendants Lt. Garcia and Lt. Cates raise a factual challenge to the Court's subject matter jurisdiction.

### B.      Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

## III.   ANALYSIS

Plaintiff brings constitutional claims against the United States and numerous BOP officers and employees seeking monetary relief. This action, therefore, is brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[4]  Also, because 42

---

[4] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (holding that federal officers acting under color of law are liable for damages for certain constitutional violations).

U.S.C. § 1983 does not provide a cause of action against federal officials acting under color of federal law, *Roots v. Callahan*, 475 F.2d 751, 752 (5th Cir. 1973), insofar as Plaintiff may be attempting to plead a § 1983 claim, the Court does not address this claim.

### A.    Rule 12(b)(1) Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Lt. Garcia and Lt. Cates raise a factual challenge to the Court's subject matter jurisdiction. They contend they are officers and employees of the United States Public Health Service ("USPHS") and, therefore, entitled to absolute immunity from this suit. Defs.' Mot. 4-5, ECF No. 47; Defs.' App., ECF No. 48.

Title 42 U.S.C. § 233(a) provides that a claim against the United States under the Federal Tort Claims Act supplies the exclusive remedy for alleged damages from the performance of medical and related functions by any USPHS officer or employee acting within the scope of employment. 42 U.S.C. §233(a). As such, USPHS personnel are not personally subject to *Bivens* actions for harm arising out of performance of their official duties. *Hui v. Castaneda*, 559 U.S. 799, 802 (2010). As stated by the Supreme Court, "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Id.* at 806.

The undisputed evidence provided by Lt. Garcia in support of his factual challenge under Rule 12(b)(1) shows he is a commissioned officer with the USPHS and has been so employed during the entire time he has worked at FMC Carswell. *See* Decl. of Commander Alfredo Garcia ¶ 1, Defs.' App. 1, ECF No. 48. He was primarily assigned as a Nurse Manager during the time relevant to Plaintiff's lawsuit and later became the Assistant Health Services Administrator. *Id.* Lt. Garcia states in his Declaration as follows: "I was acting within the course and scope of my office as a USPHS officer performing medical or related functions when serving as Assistant Health

Services Administrator at the time and later as the Director of Nursing at FMC Carswell, including with respect to any matters relating to [Plaintiff's] medical care and treatment." *Id.* ¶ 3. He further states that any "involvement I may have had regarding the facts at issue in this lawsuit would have occurred solely within the scope of my official duties as a commissioned officer in the USPHS detailed to serve as FMC Carswell." *Id.*

The undisputed evidence provided by Lt. Cates in support of his factual challenge under Rule 12(b)(1) shows he is an officer of the USPHS. *See* Decl. of Lieutenant Commander Damon Cates ¶ 1, Defs.' App. 2, ECF No. 48. He states he is a licensed physician's assistant and has held that position at FMC Carswell since September of 2010. *Id.* Cates states in his Declaration as follows: "I was acting within the course and scope of my office as a USPHS officer performing medical or related functions when serving as a Physician Assistant at FMC Carswell, including with respect to any matters relating to [Plaintiff's] medical care and treatment." *Id.* ¶ 3. He further states that any "involvement I may have had regarding the facts at issue in this lawsuit would have occurred solely within the scope of my official duties as a commissioned officer in the USPHS detailed to serve as a Physician Assistant at FMC Carswell." *Id.*

Having reviewed the pleadings, legal arguments, and undisputed Declarations, the Court concludes that Lt. Garcia and Lt. Cates are entitled to absolute immunity from this suit as USPHS officers and employees acting within the scope of employment. *See* 42 U.S.C. §233(a); *Hui*, 559 U.S. at 802, 806. Accordingly, the Court will grant the Individual Defendants' motion to dismiss Plaintiff's claims against Lt. Garcia and Lt. Cates pursuant to Fed. R. Civ. P. 12(b)(1).

### B.      Rule 12(b)(6) Motion

The remaining Individual Defendants—Dr. Grullon-Mejia, Dr. Langham, Dr. Serrano-Mercado, Warden Upton, Associate Warden Campos, Yardbrough, and LeBlanc—move to dismiss the Amended Complaint for failure to state a claim.

8

1.    **Drs. Grullon-Mejia, Langham, and Serrano-Mercado (sometimes collectively, the "Physician Defendants")**

Plaintiff asserts that the Physician Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by acting with deliberate indifference to her medical needs. The Physician Defendants have moved to dismiss these claims pursuant to Rule 12(b)(6). Plaintiff has not filed a response.

Under the Eighth Amendment, institutional officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). To state a constitutional violation, a plaintiff must show that the official acted with deliberate indifference toward her serious medical needs, resulting in an unnecessary and wanton infliction of pain. *Id.*; *see also Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary and wanton infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs"). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks omitted)) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. A plaintiff must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). Even where a plaintiff establishes the objective element, an Eighth Amendment violation occurs only when the official (1) knew of the substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to alleviate it. *Id.*

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."

9

*Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) (citation omitted). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show the official was actually aware of risk and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Similarly, a plaintiff's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a provider's decision not "to follow the recommendations of another treating physician does not amount to deliberate indifference." *Gobert*, 463 F.3d at 350 n.32. In sum, a plaintiff must demonstrate that staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In support of their motion to dismiss, the Physician Defendants contend that Plaintiff's allegations of "deliberate indifference to her medical needs" are conclusory under *Iqbal* and *Twombly* and unsupported by factual allegations. Defs.' Mot. 6, ECF No. 47. They further argue:

> [Plaintiff] does not allege that [the Physician Defendants] did not treat her for the ailments they, as medical professionals, believed were causing her discomfort, namely diabetes. She does not allege *facts* suggesting that these physicians ever refused to treat her, ignored her complaints, intentionally treated her incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. To the extent these physicians were wrong in their assessments that the pain in [Plaintiff's] legs and feet were due to diabetes but she could handle her activities of daily living—a conclusion Defendants deny—that could perhaps state a claim for medical malpractice, but as

10

> noted above, [providing] negligent diagnoses and inadequate medical care may
> state a claim for medical malpractice, but without more, they do not evince
> deliberate indifference.

*Id.* at 7, ECF No. 47 (original emphasis). As previously stated, Plaintiff has not filed a response to
the motion to dismiss.

As a threshold matter, to avoid dismissal for failure to state a claim, a plaintiff must allege
facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.
Neither mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of
action" suffices to state a claim upon which relief may be granted. *Id.* Even liberally construing
the pleadings, as the Court is required to do given Plaintiff's *pro se* status, the Court agrees with
the Individual Defendants that Plaintiff's use of "labels and conclusions" and her "formulaic
recitation" of the elements of her Eighth Amendment claim are not enough, absent supporting
factual allegations, to state a claim.

Here, Plaintiff's medical claims concern medical judgments made by the Physician
Defendants. With respect to Dr. Serrano-Mercado, Plaintiff alleges that she wrongly attributed
Plaintiff's pain to diabetes and, in approximately October of 2017, discharged her from the in-
patient unit before Plaintiff believes she should have been discharged. Am. Compl. 5, 9. In her
answers to the Court's questions, she adds that Dr. Serrano-Mercado discharged her from the in-
patient unit twice before she believes she should have been discharged and disregarded her medical
condition. Pl.'s Ans. No. 2. Plaintiff alleges that Dr. Grullon-Mejia did not order x-rays when she
complained of foot pain in April of 2016, wrongly attributed her foot pain to diabetes, and did not
prescribe pain relieving medication. Am. Compl. 5, 8, 9. In her answers to the Court's questions,
she states that Dr. Grullon-Mejia did order x-rays in April of 2106, in contradiction to her
allegations in the Amended Complaint. Pl.'s Ans. No. 2. With respect to Defendant Dr. Langham,
Plaintiff alleges he generally failed to provide her with medical care when he did not give her

permission to have an inmate assistant push her wheelchair because of her wrist pain. Am. Compl. 9. In her answers to the Court's questions, she states "Dr. Langham [was] deliberate[ly] indifferent to my medical needs to have a pass for [an inmate assistant] to push me that caused[d] damages to my hands and increase[d] the Carpal Tunnel situation that [sic] I cannot wheel myself all of the time." Pl.'s Ans. No. 2. She states that her current situation would not be as bad had Dr. Langham given her a medical pass for an inmate assistant to push her. *Id.*

These determinations are "classic example[s] of a matter for medical judgment" and, therefore, cannot form the basis of a deliberate indifference claim. *Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015) (quoting *Estelle*, 429 U.S. at 107); *see Johnson v. Gregg Cnty. Jail*, Civil Action No. 6:20-cv-00377-JCB, 2021 WL 789886, at *2 (E.D. Tex. Jan. 8, 2021) (concluding plaintiff failed to state a claim when he challenged follow up care provided and alleged doctor was deliberately indifferent "by failing to send him to physical therapy"), *report and recommendation adopted*, 2021 WL 785089 (E.D. Tex. Mar. 1, 2021); *Smith v. Larpenter*, Civil Action No. 16-15778, 2017 WL 2773662, at *7 (E.D. La. May 3, 2017) (citing *Brauner*, 793 F.3d at 498-99) ("[T]he decision of which specific medication to prescribe Plaintiff is a classic example of a matter of medical judgment which is not actionable under § 1983."), *report and recommendation adopted*, 2017 WL 2780748 (E.D. La. June 26, 2017); *Auguillard v. Toce*, Civil Action No. 14-394-JJB-RLB, 2015 WL 5093842, at *5 (M.D. La. Aug. 27, 2015) (collecting cases) (reasoning that "a decision to refer an inmate for additional treatment, tests or evaluation is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference"); *Gonzalez-Lamas v. McAdams*, Civil Action No. 5:14-cv-124–C, 2015 WL 3883514, at *4 (N.D. Tex. June 22, 2015) ("[Defendants] determined that surgery was not required . . . a classic example of a matter of medical judgment." (internal quotation marks omitted)); *Dickerson v. Murray*, Civil Action No. 3:11-cv-200, 2014 WL 12526722, at *2 (S.D.

Tex. Jan. 15, 2014) ("As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional right, even though the prisoner may disagree with the course of treatment.").

Further, even if the Physician Defendants erred in making those decisions, such errors, at most, constitute claims for negligence or medical malpractice—not deliberate indifference. *See Estelle*, 429 U.S. at 107. Allegations of "unsuccessful medical treatment, negligence, or medical malpractice are insufficient to give rise to a claim of deliberate indifference." *Fife v. NFN Hensley, Health & Med. Adm'r*, No. 08-10062, 2009 WL 348823, at *1 (5th Cir. Feb. 12, 2009) (per curiam) (citing *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)); *Wojtowicz v. Lubbock Cnty. Det. Ctr.*, Civil Action No. 5:19-cv-166-BQ, 2020 WL 2529373, at *3 (N.D. Tex. Mar. 19, 2020) ("[Plaintiff's] assertions that Doe Defendants should have surgically repaired his [injury] amount to a mere claim for disagreement with treatment, negligence, or malpractice—none of which support a constitutional violation."), *report and recommendation adopted*, 2020 WL 2528537 (N.D. Tex. May 18, 2020). Accordingly, even liberally construing her allegations against the Physician Defendants, the Court determines she has failed to state a deliberate indifference claim to her serious medical needs.

In addition, as to Plaintiff's allegations that her medical complaints were ignored, Plaintiff has not pleaded facts sufficient to establish deliberate indifference. Initially, the Court notes that Plaintiff's vague claims on this front are so devoid of specifics that the Court is unable to determine that any of the Physician Defendants was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and actually "[drew] the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Armstrong v. Hodges*, Civil Action No. H-11-1611, 2011 WL 5156796, at *2 (S.D. Tex. Oct. 27, 2011) (dismissing medical

claim where plaintiff failed to plead facts which would "permit a finding that [defendant]" could infer a substantial risk of harm and "actually drew an inference").

The remainder of her factual allegations against the Physician Defendants are best understood as dissatisfaction with the care she was provided—a belief that does not equate to deliberate indifference. *See McQueen v. Karr*, No. 02-10553, 2002 WL 31688891, at *1 (5th Cir. 2002) (per curiam) (affirming dismissal of prisoner's claim based on "dissatisfaction with the treatment offered him"); *Shipley v. Statton*, Civil Action No. 1:08-CV-133-C ECF, 2009 WL 1469716, at *4 (N.D. Tex. May 27, 2009) ("[Plaintiff's] dissatisfaction and disagreement with the [care provided] does not demonstrate that he was denied treatment.").

For these reasons, the Court will grant the Individual Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's claims against the Physician Defendants.

### 2. Warden Upton and Associate Warden Campos

Plaintiff alleges Defendants Warden Upton and Associate Warden Campos should be held liable for the acts and omissions of their employees because they did not adequately train or supervise the employees and did not overrule the decisions of medical personnel. Am. Compl. 9, 11; Pl.'s Ans. Nos. 1, 2.

In support of dismissal, Warden Upton and Associate Warden Campos contend that Plaintiff fails to state a claim against them for denial of medical care under the Eighth Amendment based on deliberate indifference because she has failed to allege any personal involvement by either in her medical care and failed to allege that either implemented a policy so deficient as to amount to a deprivation of constitutional rights. *See* Defs.' Mot. 7-9, ECF No. 47.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citation omitted). A plaintiff must identify a defendant who is "either personally involved in the constitutional violation or whose acts are causally

connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citations omitted). A prison official who does not see or examine an inmate fails to be personally involved in the harm for which the inmate sues. *See Whitely v. Russo*, Civ. No. G-03-555, 2006 WL 2434445, at *3 (S.D. Tex. Aug. 21, 2006). Further, lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of respondeat superior, which does not generally apply in *Bivens* actions. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Thus, to be held liable, supervisory federal officials, such as Warden Upton and Associate Warden Campos, must either be involved personally in the alleged deprivation, or must have implemented a policy "so deficient that the policy itself acts as a deprivation of constitutional rights." *Id.*

Plaintiff fails to state facts from which the Court may infer that either Warden Upton or Associate Warden Campos was a trained medical provider. She does not allege that they evaluated or provided medical treatment to inmates. She has failed to allege facts suggesting that either Defendant was personally involved in the alleged provision of constitutionally inadequate medical care.

Instead, Plaintiff's allegations pertaining to Warden Upton and Associate Warden Campos revolve around their alleged failure to override decisions of medical personnel when Plaintiff made complaints to them. These allegations fail to rise to the level of stating a claim for deliberate indifference to a serious medical need. Further, a prisoner "does not have a federally protected liberty interest in having [her] grievances resolved to [her] satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Finally, because Plaintiff is attempting to assert claims against Warden Upton and Associate Warden Campos based on their supervisory capacity, these allegations fail to state a claim under *Bivens*. *Cronn*, 150 F.3d at 544.

For these reasons, the Court will grant the Individual Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's claims against Warden Upton and Associate Warden Campos.

### 3. Defendants Yardbrough and LeBlanc

Plaintiff alleges that Yardbrough and LeBlanc violated her constitutional rights under the Eighth Amendment by using excessive force. She alleges that Yardbrough shut her foot in a car door while transporting her to JPS for a medical visit, Am. Compl. 8-9, and that LeBlanc "shook and rough handled her" during an altercation about her housing assignment. *Id.* at 10. The Individual Defendants move to dismiss these claims, arguing that Plaintiff "cannot demonstrate that *Bivens* provide[s] her with a remedy." Defs.' Mot. 9, ECF No. 47. For the reasons that follow, the Court agrees that Plaintiff's *Bivens* claims against Yardbrough and LeBlanc cannot succeed and must be dismissed.

*Bivens*, unlike 42 U.S.C. § 1983 (applicable to state actors), is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1854 (2017) ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

The United States Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a

prisoner] a damages remedy for failure to provide adequate medical treatment." *Abbasi*, 137 S. Ct. at 1854-55; *see id.* at 1855 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

The Supreme Court has developed a two-part test to determine if a *Bivens* claim may proceed. *Abbasi*, 137 S. Ct. at 1843. Because *Bivens* is a judicially crafted remedy, and not a statutory one like 42 U.S.C. § 1983, courts should consider (1) whether the case "presents a new context" and, if it does, (2) whether "there are any special factors that counsel hesitation about granting the extension." *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (finding "the *Bivens* question is antecedent" to other issues in a case, including qualified immunity (internal quotations and citations omitted)). The Supreme Court has also strongly counseled against extending *Bivens* to new contexts, *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020), and repeatedly held that such extensions are "a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857; *see also Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("*Bivens* was the product of an 'ancient regime' that freely implied rights of action" and that "ended long ago.") (emphasis in original), *cert. denied*, 141 S. Ct. 2669 (2021).

### a.    *Plaintiff's Claims Represent a New Bivens Context*

For purposes of implying a damages remedy under the Constitution, a proposed *Bivens* claim is "new" if the "case is different in a meaningful way from previous *Bivens* cases" in which the Supreme Court had recognized a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1859. "Virtually everything else is a 'new context'" and the "understanding of a 'new context' is broad" . . . "because 'even a modest extension' of the *Bivens* trilogy 'is still an extension.'" *Oliva*, 973 F.3d at 442   (citations omitted). The types of differences that are meaningful enough to make the context "new" are myriad and include "the rank of the officers involved; the constitutional right at

issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1860.  Moreover, "it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment in the same way.'" *Oliva*, 973 F.3d at 442 (quoting *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)).

Construed liberally, Plaintiff is attempting to assert a *Bivens* claim based on allegations that Defendants Yardbrough and LeBlanc used excessive force against her in violation of the Eighth Amendment.

Because the Court concludes this case differs significantly from the *Bivens* trilogy of actions sanctioned by the Supreme Court, the Court determines that Plaintiff's claims arise in a new context. *Compare Bivens*, 403 U.S. at 389-90 (manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment); *Carlson*, 446 U.S. at 16-18 (recognizing a *Bivens* cause of action under the Eighth Amendment for a deceased prisoner who was deprived medical attention by prison officers who knew of his serious medical condition); *Davis*, 442 U.S. at 229-34 (recognizing a *Bivens* cause of action under the Due Process Clause of the Fifth Amendment for a female employee who was terminated based on her gender).

Although Plaintiff premises her claims on alleged violations of the Eighth Amendment, as did the plaintiff in *Carlson*, her case differs significantly from his. In *Carlson*, the Court recognized a *Bivens* cause of action under the Eighth Amendment in a case involving an alleged failure to provide medical treatment for an inmate with a "serious[ ]" and "Chronic Asthmatic Condition" known to prison officials. *Carlson*, 446 U.S. at 16 n.1. Plaintiff's allegations against Defendants

Yardbrough and LeBlanc do not assert deliberate indifference to serious medical needs, but rather excessive force.

As the Court concludes that Plaintiff's excessive force claims against Yardbrough and LeBlanc represent a "new" *Bivens* context, it proceeds to the second step of the analysis.

  b.  *Special Factors Counsel Hesitation in Extending New Bivens Remedy Here*

When a claim arises in a different context from one of the three Supreme-Court-recognized *Bivens* claims, such as here, the Court turns to whether "there are special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (cleaned up). In such a case, "a *Bivens* remedy will not be available." *Id.*

The "special factors" inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. These factors include whether Congress has legislated on the right at issue and whether alternative remedies exist for protecting that right. *Id.* at 1858, 1862. Courts also consider separation-of-powers concerns. *Hernandez*, 140 S. Ct. at 743.

Three special factors cause the Court to hesitate here. First, congressional legislation already exists in this area. Congress addressed the issue of prisoners' constitutional claims in the PLRA, 42 U.S.C. § 1997e, which "does not provide for a standalone damages remedy against federal jailers." *Abbasi*, 137 S. Ct. at 1865. This factor supports the conclusion that Congress considered and rejected a federal damages remedy for claims like Plaintiff's.

Second, the Federal Tort Claims Act ("FTCA"), provides a potential, alternative remedy, and militates against expansion of a *Bivens* remedy. *See Abbasi*, 137 S. Ct. at 1865 ("the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."). The FTCA waives the Government's sovereign immunity from tort claims that arise from the negligent or

wrongful acts or omissions of federal employees in the course of their employment. 28 U.S.C. §§ 1346(b)(1), 2679(b)(1).

Third, as the Fifth Circuit recently stated in *Butler*, "separation-of-powers concerns counsel against extending *Bivens*." *Butler*, 999 F.3d at 295. The Supreme Court has recognized that

> [r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

*Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987), *superseded by statute on other grounds*, 42 U.S.C. § 2000cc-1(a), *as recognized in Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005)). As in *Butler*, the Court concludes that extending *Bivens* to claims like Plaintiff's "would run afoul of this restraint and risk improperly entangling courts in matters committed to other branches. Indeed, because of the very complex nature of managing federal prisons, such a holding would substantially impinge on the executive branch, in addition to the legislative branch." *Id.* at *5. "Such a result would be a paradigmatic violation of separation-of-powers principles." *Id.*

For these reasons, the Court will grant the Individual Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's *Bivens* claims against Defendants Yardbrough and LeBlanc.

## IV.   LEAVE TO AMEND

Generally, "a *pro se* litigant should be offered an opportunity to amend [her] complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). However, the Court is not required to grant leave to amend "if the plaintiff has already pleaded [her] 'best case.'" *Id.*

For the reasons outlined here, Plaintiff's claims against the Individual Defendants are fatally infirm. In addition, the Court has already allowed Plaintiff leave to file an Amended

Complaint (*see* Am. Compl., ECF No. 30) and to supplement her Complaint by her Answers to the Court's Questionnaire. *See* Pl.'s Answers, ECF No. 7.

Thus, the Court concludes Plaintiff has already pleaded her best case and granting leave to amend would be futile and cause needless delay.

## V.    CONCLUSION

Based on the foregoing, the Court **grants** the Individual Defendants' Motion to Dismiss (ECF No. 47). Specifically, the Court **grants** the motion pursuant to Federal Rule of Civil Procedure 12(b)(1) with respect to Plaintiff's claims against Lt. Garcia and Lt. Gates, as they are entitled to absolute immunity, and **dismisses** Plaintiff's claims against them **without prejudice**. The Court **grants** the motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim with respect to Plaintiff's claims against Warden Upton, Associate Warden Campos, Dr. Grullon-Mejia, Dr. Langham, Dr. Serrano-Mercado, Yardbrough, and LeBlanc and **dismisses** Plaintiff's claims against them **with prejudice**.[5] Remaining are Plaintiff's claims against the United States.

In accordance with Federal Rule of Civil Procedure 54(b), a final judgment will issue separately as those defendants and claims dismissed.

**SO ORDERED** this **26th day** of **October, 2021.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[5] In the alternative to seeking dismissal under Federal Rule of Civil Procedure 12(b)(6), Warden Upton, Associate Warden Campos, Dr. Grullon-Mejia, Dr. Langham, Dr. Serrano-Mercado, Yardbrough, and LeBlanc assert they are entitled to dismissal based on qualified immunity. In light of the Court's ruling granting these Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim, it need not reach the question of whether they are entitled to qualified immunity.