## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **HELEN ANDERSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **V.** | § | **CIVIL ACTION No. 4:18-cv-871-O** |
| | § | |
| **UNITED STATES OF AMERICA, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court for review of pro-se Plaintiff Helen Anderson's ("Anderson") remaining claims under the Federal Tort Claims Act ("FTCA") against the United States of America ("USA"). Pending are two motions filed by the USA: a motion to dismiss for lack of jurisdiction and incorporated brief, and a motion for summary judgment and separate brief in support. ECF Nos. 61 and 63. The USA filed an appendix in support of each motion. ECF Nos. 62, 62-1, 65, 65-1, and 67. Plaintiff has not filed a response to the pending motions. Having considered the USA's motions, appendices, pleadings, and applicable law, and for the reasons that follow, the Court grants the USA's motion to dismiss for lack of subject matter jurisdiction as to the bulk of Anderson's claims, and grants the USA's motion for summary judgment as to the remaining claims.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 24, 2018, pro se Plaintiff Helen Anderson, an inmate in the custody of the Federal Bureau of Prisons ("BOP"), filed this civil rights lawsuit. At the time she filed her Complaint (ECF No. 1), she was incarcerated at the Federal Medical Center – Carswell ("FMC-Carswell") in Fort Worth, Texas. On October 10, 2020, she was released on home confinement under the COVID-19 Cares Act. See ECF No. 28. She was released from BOP custody on

February 10, 2022. See https://www.bop.gov/inmateloc/ (last visited March 15, 2022).

The Court permitted Plaintiff to supplement her allegations by submitting answers to the Court's questionnaire, which she did on May 2, 2019. See Pl.'s Ans., ECF No. 7.1 On January 8, 2021, Plaintiff, who is proceeding in forma pauperis, filed an Amended Complaint, the live pleading. Am. Compl., ECF No. 30. In her Amended Complaint, she claims primarily that individual Defendants were deliberately indifferent to her serious medical needs on several occasions during the period she was incarcerated at FMC-Carswell. She also names the United States of America as a Defendant. By Opinion and Order and Rule 54(b) Judgment entered on October 26, 2022, the Court  dismissed Anderson's claims against Lieutenant Garcia and Lieutenant Gates under Federal Rule of Civil Procedure 12(b)(1) because they were each entitled to absolute immunity from suit, and dismissed all claims against the remaining individual Defendants for failure to state claims upon which relief  could be granted under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 50, 51. The Court then issued a modified scheduling order to consider dispositive motions in this long-pending case, and the USA's motions were then timely filed.

Plaintiff alleges she has multiple physical maladies including: Type I diabetes; peripheral neuropathy; depression; urinary incontinence; allergic rhinitis; osteoporosis; osteoarthritis; constipation; Type II diabetes; hyperlipidemia; and hypertension. Am. Compl. 6, ECF No. 30.[1] In this action, however, Anderson's claims center primarily around care provided to address problems in her legs and feet. According to Anderson, she had repeated episodes of her legs giving out in 2016 but she was not assigned to the inpatient section of the medical center at FMC-Carswell, as she believes she should have been. Am. Compl. 8, ECF No. 30. She alleges

---

[1]Because the page numbers in the Amended Complaint are sometimes missing, the Court cites

that on April 15, 2016, she went to sick call regarding this concern and a physician assistant on duty refused to treat her, did not order x-rays, and instead instructed her to go to sick call on April 18, 2016. She claims that medical staff were indifferent to her medical needs by not ordering x-rays on April 15, 2016, and by failing to properly diagnose her left foot condition as possible fractures and instead attributing all her medical conditions to her diabetes. *Id.*

Anderson also complains of an alleged incident in March of 2017. *Id.* According to Anderson, on March 17, 2021, she was transported to JPS Hospital for an injury to her foot and ankle caused by another inmate, who allegedly ran over Anderson's foot with that inmate's walker. *Id.* Anderson alleges that during the transport to the hospital, a correctional officer shut the door "into plaintiff's foot." *Id*. Anderson claims that she asked the officer to open the door to free her foot from the frame, but the officer declined. *Id.* at 8-9. Anderson claims that her foot was shut in the door for the entire trip to JPS Hospital, and that the incident caused three fractures in her right foot and broke all of her toes. *Id.* at 9.

Finally, Anderson complains that despite her various health conditions, she was not assigned an inmate nursing assistant to help with her activities of daily living and that several BOP staffers did not prescribe pain medication to her. *See generally* Am. Compl., ECF No. 30. She assails the care provided at FMC- Carswell in general and complains about her room assignments and the alleged lack of handicapped-equipped bathroom. *Id.*

## II.    MOTION TO DISMISS

### A.    Applicable Legal Standard Fed. R. Civ. P 12(b)(1).

Federal courts are courts of limited jurisdiction, and in the absence of jurisdiction expressly conferred by statute or the Constitution, lack the power to adjudicate claims. *Exxon*

---

to the page number of the ECF filing.

*Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. Heere Mac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). When a motion to dismiss for lack of subject matter jurisdiction is supported by evidence, it is considered a factual attack, and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The Court is therefore "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. In response to a factual attack, the plaintiff, as the party seeking to invoke jurisdiction, has the burden of submitting evidence and proving by a preponderance of the evidence the existence of subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Regardless of whether the attack is facial or factual, the party asserting federal jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

Thus, the Court may consider matters outside the pleadings and attachments thereto in resolving a motion for lack of subject-matter jurisdiction under Rule 12(b)(1). *See Vinzant v. United States*, No. 2:06-cv-10561, 2010 WL 1857277, at *3 (E.D. La. May 7, 2010) (FTCA case) (citing *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009)); *see also See Allen v. Schafer,* No. 4:08-cv-120-SA-DAS, 2009 WL 2245220, at *2 (N.D. Miss. July 27, 2009) ("It is well settled that on a 12(b)(1) motion the court may go outside the pleadings and consider

additional facts, whether contested or not and may even resolve issues of contested facts") (citing *Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986)). The United States provided copies of the records related to Anderson's administrative claims, and the March 1, 2022 Declaration of FMC-Carswell Special Investigative Agent Christi Malone. Mot. Dism. App. 1-91, 93-94, ECF No. 62-1. The Court has considered those documents along with Anderson's pleadings.

Here, the United States moves to dismiss on the basis of lack of jurisdiction on several grounds. The Court will address each ground for dismissal.

### B. No Claim Against the United States for Constitutional Violations Based Upon the conduct of Lieutenant Garcia

As noted, Anderson's Amended Complaint names nine defendants in total. *See generally* Am. Compl. 1-11, ECF No. 30. With respect to the United States, other than listing the "United States" in the style of the Amended Complaint, Anderson specifically states that the United States is being named "in place of Alfredo Garcia." Am Compl. 3, ECF No. 30. Defendant Lieutenant Garcia was previously found by the Court to be a member of the United States Public Health Service and thus immune from suit. Op and Order 7-8, ECF No. 50. When asked to briefly describe the acts or omissions of the United States, as substituted for Lt. Garcia, Anderson complains that he was over the nurses and inmate assistance program but did not provide Anderson with the assistance of these persons she believed she was entitled to receive. Am Compl. 3, ECF No. 30.

The exact legal bases for Anderson's claims against the United States is otherwise difficult to discern. One reading is that Anderson asserts a claim against the United States for the conduct of Lt. Garcia, such that Anderson is seeking to assert claims of deliberate indifference by Lt. Garcia against the United States. *See, e.g.*, Am. Compl. 9, ECF No. 30. (complaining that Lt. Garcia and others "were deliberat[ly] indifferent to Plaintiff's serious medical conditions and

ignored her complaint of lack of medical needs, her pain and suffering as well as safety were ignored.").)  To the extent Anderson attempts to assert constitutional claims against the United States for the actions of Lieutenant Garcia, then such claim must be dismissed for lack of subject matter jurisdiction because the United States has not waived its sovereign immunity for claims of constitutional violations. *See Spotts v. United States*, 613 F.3d 559, 569 n.7 (5th Cir. 2010) (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (holding that constitutional torts are not a predicate for an FTCA claim)).

The Court will now turn to a review of Anderson's claims that are barred by failure to exhaust administrative relief.

### C.    Dismissal of Some Claims against the United States for Lack of Exhaustion of Administrative Remedies

#### 1.    Exhaustion Requirement for Claims Against the United States

The FTCA provides that the jurisdiction authorized under 28 U.S.C. § 1346(b) for civil actions for loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his employment, is an exclusive remedy against the United States. 28 U.S.C.A. § 1346(b); 28 U.S.C.A. § 2679(b)(1). The United States is immune from suit unless it consents to be sued, and the terms of such consent, or waiver of its sovereign immunity, "define [the] Court's jurisdiction to entertain the suit." *United States v. Testan,* 424 U.S. 392, 399 (1976). The Supreme Court has recognized that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian,* 453 U.S. 156, 161 (1981) (citations omitted). The requirement of exhaustion of administrative review "is a jurisdictional prerequisite to the filing of an action under the FTCA" and cannot be waived.

*Gregory v. Mitchell*, 634 F.2d 199, 203-04 (5th Cir. 1981) (citations omitted).

This Court's subject-matter jurisdiction over an action against the United States under the FTCA is thus expressly conditioned upon compliance with the language of 28 U.S.C. § 2675(a), which requires that a claimant "shall have first presented the claim to the appropriate Federal agency," and either obtain a written denial of the claim or wait six months after its filing at the appropriate agency to deem the agency decision as a final denial. *See* 28 U.S.C.A. § 2675(a). Since presentment of the administrative claim is jurisdictional, it must be pleaded and proven by the FTCA claimant. *Barber v. United States*, 642 F. App'x 411, 413 (5th Cir. 2016). "Even though the requirements of § 2675 are minimal, an FTCA claimant must nonetheless provide facts sufficient to allow his claim to be investigated and must do so in a timely manner." *Cook v. United States on behalf of U.S. Dep't of Labor*, 978 F.2d 164, 166 (5th Cir. 1992). The purpose of the FTCA's administrative-presentment requirement is to allow the federal agency promptly to investigate and, if appropriate, settle claims without having to resort to federal courts. *Pleasant v. United States ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 448 (5th Cir. 2014). "Further, because presentment is a condition upon which the government consent to be sued under the FTCA's waiver of sovereign immunity, it must be strictly construed in favor of the United States." *Barber*, 642 F. App'x at 413-14 (citation omitted).

In *Rise v. United States*, the Fifth Circuit held that an FTCA action can only be "based on particular facts and theories of liability" that "can be considered part of the plaintiff's administrative claim." 630 F.2d 1068, 1071 (5th Cir. 1980). The *Rise* court held that a litigant must bring "to the Government's attention facts sufficient to enable it [to] thoroughly investigate its potential liability and to conduct settlement negotiations with the claimant." *Id.* Though

-7-

"minimal, an FTCA claimant must nonetheless provide facts sufficient to allow his claim to be investigated and must do so in a timely manner." *Cook v. United States*, 978 F.2d, 164, 166 (5th Cir. 1992) (dismissing FTCA claim for lack of jurisdiction because the plaintiff's administrative tort claim was not "sufficiently specific").

2.   <u>Anderson's Administrative Tort Claims</u>

Anderson filed three separate administrative tort claims with the BOP in 2017 that address conduct contained in her amended complaint. Mot. Dism. App. 1-91, ECF No. 62-1. The first two claims, received on June 1, 2017, addressed a March 17, 2017 injury to Anderson's foot. *Id*. at 5, 31. In the first claim, assigned number TRT-SCR-2017-04758, Anderson alleges that on March 17, 2017, a fellow inmate hit Anderson's right foot, "caus[]ing great pains in [her] foot and leg. *Id*. at 5. All swollen, bruised." *Id*. According to Anderson, the injury rendered her unable to walk, and caused her to be in a wheelchair. *Id*.

The second claim, also arising on the same date March 17, 2017, but assigned separate number TRT-SCR-2017-04759, asserts that while being transported to JPS for the foot injury caused by another inmate, a correctional officer slammed the injured foot in a car door, where the foot remained stuck for the duration of the car trip. *Id.* at 31.

Anderson's third administrative claim, assigned number TRT-SCR-2018-00954, was received on November 17, 2017. *Id.* at 71. This claim complained about a April 15, 2016 fall. *Id*. Therein, Anderson states that she injured her left foot in the fall but was forced to walk on it for months because no one would investigate what was wrong with it. *Id*. According to Anderson, the injury to that foot could have been avoided if medical staff had timely x-rayed the left foot. *Id.*

The BOP denied all of Anderson's administrative claims. *Id*. at 17-18, 57-58, and 78-79.

-8-

Having conducted investigations, the BOP concluded that there was no evidence to support Anderson's claims, and no evidence of negligence on the part of any BOP employee. Anderson's requests for reconsideration were all denied. *Id.* at 27, 67, and 91.

> 3.  Anderson's Failure to File Administrative Claims of the Conduct of Lieutenant Garcia

The Court turns first to the claim by Anderson that the United States is liable to her for the actions of Lieutenant Garcia.  Here, although Anderson filed three administrative tort claims with the BOP, none of those claims references Lieutenant Garcia specifically or complains about the alleged failure to provide Anderson with access to inmate nursing assistants to help with her activities of daily living. *See generally* Mot. Dism. App. 1-91, ECF No. 62-1. As such, Anderson failed to present her claims to the appropriate administrative agency and this Court lacks subject matter jurisdiction over these claims. *See Mendoza v. United States*, No. 4:20-cv-154-O, 2020 WL 6737871, at *3 (N.D. Tex. Nov. 17, 2020) ("This Court's subject-matter jurisdiction over an action against the United States under the FTCA is thus expressly conditioned upon compliance with the language of 28 U.S.C. § 2675(a), which requires that a claimant 'shall have first presented the claim to the appropriate federal agency,' and either obtain a written denial of the claim or wait six months after its filing at the appropriate agency to deem the agency decision as a final denial."). Thus, Anderson cannot assert negligence claims against the United States for the actions of Lieutenant Garcia, and such claims must be dismissed for lack of jurisdiction.

> 4.  Anderson's Failure to File Administrative Claims on Other Facts made the Basis of her Amended Complaint

As noted above, Anderson's three administrative tort claims properly presented to the BOP set forth claims for very specific conduct, namely the failure to examine and x-ray her left foot in 2016, an alleged inmate injury to  her foot on  March 17, 2017, and the alleged car door

incident injury caused by a correctional officer on that same day, March 17, 2017. Mot. Dism. App. 5, 31, and 71. In her Amended Complaint, Anderson raises a host of additional claims and allegations regarding her care while at Carswell. For example, Anderson complains that she was forced to manually propel her wheelchair, causing pain in her hands and arms. Am. Compl. 9, ECF No. 30. She complains that some of the units where she was housed did not have handicapped accessible bathrooms or access to a sufficient number of such bathrooms. *Id*., at 10. As explained above, however, the United States' waiver of sovereign immunity under the FTCA is conditioned on a plaintiff having exhausted the available administrative remedies pursuant to 28 U.S.C. § 2675(a). These additional allegations were not raised in Anderson's administrative claims, nor do they reasonably arise from the specific claims that she did raise. Therefore, any claims other than those particularly related to the April 2016 fall and/or the March 17, 2017 injury to Anderson's right foot, or March 17, 2017 injury from a correctional officer, must all be dismissed for lack of subject matter jurisdiction.

###### D. Dismissal of Claim Arising From the March 2017 Injury to Her Foot by a Fellow Inmate as Barred by the Discretionary Function Exception to the FTCA.

As noted, Anderson did file an administrative claim asserting that a fellow inmate injured her right foot, necessitating Anderson's use of a wheelchair. Mot. Dism. App. 5, ECF No. 62-1. Anderson does not explain in the tort claim how the fellow inmate's actions were caused by the negligence of the United States and its employees. *Id.*  In her amended complaint, however, Anderson alleges that she had "repeatedly reported to officers and Lt. [that the fellow inmate was] violent and acting aggressively." Am. Compl. 8, ECF No. 30. The Court thus construes Anderson's claim as alleging that the BOP was negligent in failing to protect her from a fellow inmate with violent tendencies.

-10-

While the FTCA constitutes a general waiver of immunity, it does contain some exceptions to the waiver. One such exception is the discretionary function exception, found in 28 U.S.C. § 2680(a). The discretionary-function exception provides that the waiver of sovereign immunity does not apply to: "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* This discretionary function exception marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals. *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984). The exception covers only acts that are discretionary in nature, acts that involve an element of judgment or choice. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The exception, when properly construed, protects only governmental actions and decisions based on considerations of public policy. *Dalehite v. United States*, 346 U.S. 15, 36 (1953).

In *United States v. Gaubert*, the Supreme Court, after reaffirming the central holdings of *Varig Airlines* and *Dalehite*, explained that "when properly construed," the discretionary function exception "protects only government actions and decisions based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991). The Court explained:

> Where Congress has delegated the authority to . . . the executive branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies carry out the programs. In addition, the actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute or regulation are protected.

*Id.*

The *Gaubert* Court recognized three potential situations relative to a government

employee carrying out the directives of a statute or regulation. *Id*. at 324. First, if a regulation mandates particular conduct, and the employee obeys the mandate, the discretionary function exception will automatically apply. The second situation involves an employee's violation of a mandatory regulation which preempts application of the discretionary function exception because the regulation leaves no room for choice and the employee's actions were contrary to the policy as expressed in the regulation. *Id.* For this situation to apply, a federal statute, regulation, or policy must specifically prescribe a course of action for an employee to follow. *Redmon v. United States*, 934 F.2d 1151, 1154  (10th Cir. 1991). The directive must be "both specific and mandatory." *Id.* The third situation lies between the first two. When a regulation neither mandates nor prohibits the employee's conduct but allows the employee discretion in carrying out its directives, the very existence of that regulation creates a "strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324.

Analyzed under the test set forth in *Gaubert*, decisions pertaining to the investigation of reported threats and the separation of inmates who potentially pose a threat to other inmates are discretionary functions for which the United States has not waived sovereign immunity. The first question is whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations. Anderson has identified no statute or regulation that controls a situation where an inmate such as Anderson is under the belief that another inmate is violent or aggressive. Two federal regulations and a BOP "Program Statement" address removing an inmate from a cell when there is a question about his safety. The federal regulations are 28 C.F.R. §§ 541.22(a) and 541.23. These regulations discuss circumstances where the

-12-

Warden *may* place an inmate in administrative detention for his safety. BOP Program Statement 5270.11[2] also discusses when a Warden *may* place an inmate in administrative detention for his safety. There is no language in either of the regulations or in the BOP policy statement that mandates when an inmate will be placed in administrative detention for his safety. This decision is left to the discretion of the Warden.

The second inquiry is whether the regulatory actions involved the kind of policy judgment that the discretionary function exception was designed to shield. The Supreme Court has previously recognized that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, n.14 (1981)). Although *Whitley* did not involve the application of the discretionary function exception, the Supreme Court has instructed lower courts that "prison officials should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 322. Here, policies developed for the purpose of maintaining security and order in an institutional environment are the type of exercise of judgment that the discretionary function exception is designed to shield.

There is no regulation or policy that governed where Anderson or the other inmate had to be housed based on one inmate's reputation of being aggressive or violent.  Also, as set forth in the Declaration of FMC-Carswell Special Agent Christi Malone, the Sentry Database containing records of any threat assessments between inmates, did not have any record of a threat assessment between Anderson and the particular inmate who allegedly injured Anderson's foot. Mot. Dism. App. 93-94, ECF No. 62-1. The decision related to where these inmates were housed was discretionary, and the United States is immune from suit on Anderson's claims arising from

-13-

[2] *See* https://www.bop.gov/policy/progstat/5270.11.pdf.

the alleged actions of her fellow inmate under the discretionary function exception. *See, e.g.,* *Griffin v. United States*, No. 1:03-cv-13, 2006 WL 722195, at *3–4 (E.D. Tex. 2006) (explaining that the discretionary function exception barred an inmate's claims against the United States based on the alleged failure to protect the inmate from being assaulted by another inmate).

Accordingly, to the extent Anderson is attempting to assert claims against the United States based upon the failure to separate her from a fellow inmate who injured her foot, this Court lacks subject-matter jurisdiction over such claim because the discretionary function applies.

Thus, in sum, the USA's motion to dismiss under Federal Rule of civil Procedure 12(b)(1) will be granted, such that all claims asserted by Anderson against the United States, except for her claims of medical malpractice/negligence in the treatment of her left foot in 2016 and claim that in  March 2017 an officer injured her foot by slamming it in a car door, must be dismissed for lack of jurisdiction. These remaining two claims will be analyzed through consideration of the USA's separate motion for summary judgment.

## III.    MOTION FOR SUMMARY JUDGMENT

Construing Anderson's amended complaint liberally, the Court will now address the two remaining claims that were arguably raised in her administrative claims to the extent they assert claims against the United States.

### A.    Summary Judgment Legal Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation

-14-

omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . .." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant [here, Anderson] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### B.      Summary Judgment Evidence

The United States filed an appendix in support of the motion for summary judgment that

includes a total of 390 pages of records. MSJ App. ECF Nos. 65 and 67. In particular, the appendix includes the February 28, 2022 Declaration of BOP Health Service Administrator Michaela Chano with over 200 pages of copies of Anderson's sealed medical records (ECF No. 67, 1-212); over 50 pages of copies of Anderson's e-mails from the Spring of 2016 and Spring of 2017 (ECF No. 65-1, 211-266); the transcripts of Anderson's February 9, 2022 deposition (ECF No. 65-1, 268-299); and the February 28, 2022 Declaration of BOP Government Information Specialist Brenda Victor with 87 pages of records related to Anderson's administrative remedies (ECF No. 65-1, 303-390). Anderson declared her Amended Complaint in this matter to be "true and correct" and made "under penalty of perjury." Am. Compl. 7, ECF No. 30. Under controlling circuit authority, this Court must consider the Amended Complaint as competent summary-judgment evidence in resolving the summary judgment motion. *See Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (a plaintiff's verified complaint may serve as competent summary judgment evidence); *see also Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (citing *Huckabay v. Moore*, 142 F.3d 233, 240 n. 6 (5th Cir. 1998)).

The United States has presented a lengthy factual history related to what Anderson's medical records in the MSJ Appendix reveal regarding the medical care provided to her during the relevant time periods made the basis of the Amended Complaint. MSJ Brief 5–17, ECF No. 64. As noted, Anderson has not filed any response, and thus has not come forward with any evidence to contest defendant's summary judgment motion. Because Anderson's remaining claims for relief under the FTCA can be resolved on legal grounds, the Court does not include a restatement of the factual chronology inclusive of that listed by the United States.

**C.    Analysis**

-16-

1.      Claim of Failure to Properly Diagnose Injury to Anderson's Left Foot

Anderson raises a host of complaints surrounding a fall she experienced in April of 2016. Am. Compl. 5, 8, ECF No. 30.  As set forth in the Statement of Facts, however, at the time of the event in question, Anderson had been moved out of the hospital building at FMC-Carswell after a full examination by medical personnel wherein they concluded that she could independently perform her activities of daily living and no longer needed to be in a hospital setting. MSJ Brief 8-13, ECF No. 64. Anderson had not sought treatment through the sick call process for any complaints regarding this move and any alleged difficulties or falls. She submitted no e-mail complaints to staff. According to Anderson, she went to the medical department on April 15, 2016 and attempted to explain to a physician assistant that she was in pain and falling, but she was turned away. But there is no record of this alleged encounter. Anderson asserts that she fell on the way back to her unit, but that no x-rays or treatment were provided until the following Monday, April 18, 2016. She further asserts that no care was provided to her left side for months following the fall. What Anderson has failed to provide, however, is probative evidence to support her underlying facts, or to support a conclusion that the United States acted negligently.

As discussed in detail above, the FTCA authorizes civil actions for damages against the United States for personal injury caused by the negligence of government employees when private individuals would be liable under the substantive law of the state in which the negligent acts occurred. *See* 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2674.  The FTCA essentially borrows from state law in that it allows the United States to be held liable for allegedly tortious conduct "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, to the extent Anderson complains of alleged medical negligence occurring at FMC-Carswell in Texas, Texas law applies to Anderson's remaining FTCA claims.

*See Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985) ("Under the [FTCA], liability for medical malpractice is controlled by state law.").

In Texas, "health care liability claims are subject to strict pleading and proof requirements." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 561 (5th Cir. 2008) (citing Tex. Civ. Prac. & Rem. Code §§ 74.001–507). A plaintiff in a malpractice action "bears the burden of proving (1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard. *Id.* Unless the mode or form of treatment is a matter of common knowledge or is within the experience of a lay person, expert testimony is required to prove the applicable standard of care as well as its breach. *See id.* at 601–02.  Expert testimony is also required to show that the breach proximately caused the harm suffered. *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005). In short, subject to the narrow exception for matters of common knowledge, a plaintiff must produce expert testimony to meet his burden of proof on a malpractice claim. *Hannah*, 523 F.3d at 601; *see also Prindle v. United States*, No. 4:10-cv-54-A, 2011 WL 1869795, at *1–2 (N.D. Tex. May 13, 2011) (holding that expert testimony is required to establish the standard of care with respect to a FTCA claim that medical personnel were negligent in failing to diagnose and treat carcinoma); *Woods v. United States Gov't*, No. 3:08-cv-1670-D, 2010 WL 809601, at *3 (N.D. Tex. Mar. 8, 2010) (holding that expert testimony is necessary to establish the standard of care with respect to an FTCA claim that a VA doctor committed medical malpractice by prescribing a cholesterol medication that interacted with the plaintiff's diabetes and liver disease).

As the materials submitted in the appendix reveal, Anderson was seen and treated by medical personnel following her fall on April 15, 2016. MSJ App. 1-210, ECF No. 67. Medical personnel understood from Anderson that she fell on her right side and suffered injuries on that side of her body. They examined Anderson, had x-rays taken, and treated her for the injuries they understood her to have suffered on the day she reported the accident. *See generally Id.* Although Anderson was seen by multiple providers, to include multiple members of the BOP medical staff, none of those records reflects that Anderson reported a history of injuring her left foot. Anderson cannot create a genuine issue of material fact that those records are wrong by insisting well after the fact that she reported an alleged injury to her left foot to medical officials at the time in question. *See Tipton v. Livingston*, No. 1:14-cv-370, 2017 WL 42155098, at *1-2 (E.D. Tex. Sep. 9, 2017) (when one party alleges facts blatantly contradicted by the record, a court should not adopt that version of facts for purposes of ruling on a summary judgment motion).

Moreover, accepting Anderson's version of events as true even where they are contradicted by the contemporaneous medical records, Anderson has not shown—and cannot show—that the medical standard of care, and the issues of breach and causation regarding the treatment of the medical conditions detailed in her pleadings, are matters of common knowledge or within the general experience of a lay person, so as to excuse the requirement to provide evidence in the form of expert testimony. Whether it was negligent for the physician's assistant to determine her complaints did not fall in the category of an emergency requires expert testimony. Similarly, expert testimony is necessary to support her claim that it was negligent for multiple members of the medical staff to not understand that she was alleging an injury to her left foot, to not see evidence that her left foot was allegedly injured in the fall, and to not x-ray the left foot despite the lack of evidence pointing to an injury of the left foot. Texas law only

-19-

excuses the requirement for expert testimony in cases of truly rare, obvious forms of negligence. The Texas Supreme Court has given as examples "negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body." *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990). Anderson has not identified any such acts in this lawsuit.

Additionally, by failing to provide an expert opinion, Anderson cannot establish a fact issue with regard to proximate cause. There must be a causal connection between the alleged negligence and the alleged injury. *See Garza v. Levin*, 769 S.W.2d 644, 646 (Tex. App.—Corpus Christi 1989, writ denied). Here, Anderson essentially argues that had the physician's assistant not dismissed her complaints, she would not have tripped on her way back to the unit. Am. Compl. 5, ECF No. 30. But Anderson has no evidence to support a claim that despite a doctor finding her completely independent in her recovery, and  releasing her from care because her injuries had healed, and despite not attending sick call for the week, her condition was such that a reasonable doctor would not have sent her back to her housing unit and would have instead immediately admitted her to the hospital. MSJ Brief 8-12, ECF No. 64. Indeed, even after all the examinations and imaging performed in the aftermath of her fall, medical staff did not determine that she required hospitalization and/or could not safely navigate with her walker. In short, Anderson cannot demonstrate that any actions on the part of the physician's assistant in sending her back to her unit on April 15, 2016, were the proximate cause of her subsequent fall and injury. Anderson's medical negligence claim arising from the treatment of her April 2016 foot injury fails as a matter of law without the support of expert testimony. Therefore, the United States is entitled to summary judgment on this claim.

2.     Claim that She Suffered a Foot Injury from a Correctional Officer

Finally, Anderson claims that her right foot was injured by a correctional officer on March 17, 2017, when the officer allegedly slammed a car door on Anderson's foot while transporting her to JPS Hospital. Am. Compl. 8-9, ECF No. 30. Anderson's factual allegations surrounding this claim have changed over time (e.g. Anderson has changed her claim from her foot being broken by the car door to only her toes), is not supported by the medical record (e.g., Anderson has consistently argued that her toes were broken, but no medical record supports this contention), and are otherwise not credible (e.g., Anderson insists that the second correctional officer sitting in the same car with no solid barrier between the front and back seat could not hear her cries of pain and pleas for assistance, but the correctional officer could). Accepting any and all versions of the claim that a car door was slammed on Anderson's foot, however, her claim fails because she lacks competent evidence to support a showing of proximate cause that the car door caused any additional injury to her foot.

The elemental tort principles of causation under state law apply with equal force to the FTCA. Under the FTCA, the United States is liable for those personal injuries "*caused* by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b) (emphasis added). The two components of proximate cause are cause-in-fact and foreseeability. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (citing *Doe v. Boys Clubs of Greater Dallas. Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). "The test for cause in fact, or 'but for causation,' is whether the act or omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'" *Id*. (quoting *Doe*, 907 S.W. 2d at 477). A finding of cause-in-fact cannot be established by mere conjecture, guess or speculation, and "[c]ause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible," because "even if the injury would not have happened but for the defendant's

conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause." *Doe*, 907 S.W.2d at 477. The Texas Supreme Court has stated that "'[t]he evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries . . . [and] justify the conclusion that such injury was the natural and probable result thereof.'" *Id.* (quoting *Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (1939)).

In this case, Anderson has alleged that the car door broke her foot and toes. Am. Compl. 9, ECF No. 30.  But there is no dispute that Anderson also suffered an injury to her right foot prior to the alleged car door incident that was significant enough to render Anderson unable to walk because her right foot was immediately swollen and bruised. Am. Compl. 8, ECF No. 30. The condition of the foot was such that medical staff at FMC-Fort Worth determined that she needed to be taken to an outside hospital for evaluation. *Id.* That evaluation revealed broken bones in the top part of Anderson's foot, but not to her toes which she now alleges were the part that were caught in the car door. As explained above, without providing expert testimony, Anderson cannot demonstrate that the alleged occurrence of a car door shutting on her foot, caused any additional injury to her foot.

Therefore, any allegation of negligence (and resulting damages) based on the claim that a transport officer closed a car door on her foot must fail due to the lack of proof of causation.

In sum, the United States is entitled to summary judgment on Anderson's final two claims, the claim of failure to properly treat her April 2016 foot injury and the claim that a transport officer in March 2017 injured her foot by closing it in a car door, and such claims must be dismissed with prejudice.

**IV.    CONCLUSION and ORDER**

For the reasons discussed herein, it is therefore **ORDERED** that the USA's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (ECF No. 61) is **GRANTED** such that all claims asserted by Anderson against the United States, except for her claims of medical malpractice/negligence in the treatment of her left foot in 2016 and her claim that in March 2017 an officer injured her foot by slamming it in a car door, are **DISMISSED  for lack of jurisdiction**. It is further **ORDERED** that the USA's motion for summary judgment (ECF No. 63) is **GRANTED**, such that all Anderson's remaining claims against the United States of America are **DISMISSED with prejudice.**

SO ORDERED on this **16th day** of **March, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**